## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                      :    **Chapter 11**

ICE TREATS ONE, INC., et al.,              :

                         Debtors.          :    **Case No. 11-15317 (JKF)**

---

## OPINION

BY:   Jean K. FitzSimon
      United States Bankruptcy Judge

The Court submits this Opinion, pursuant to Local Bankruptcy Rule 8001-1(b),[1]

to amplify its oral bench ruling ("Bench Ruling"), issued on August 18, 2011, on the

motion (the "Motion") of the debtors, Ice Treats One, Inc., Ice Treats Two, Inc., and Ice

Treats Three, Inc. ("Debtors") and the Court's accompanying Order ("Written Order"),

dated August 25, 2011.  Each of the Debtors is the owner and operator of a Rita's

Water Ice store located in Philadelphia, Pennsylvania.  Before the Debtors commenced

their bankruptcy cases,[2] their respective landlords ("Landlords") commenced eviction

proceedings against them and had them evicted from their leased premises (the

---

[1]  Local Rule 8001–1(b) provides: "Opinion in Support of Order. The bankruptcy
judge whose order is the subject of an appeal may, within 14 days of the filing of the
notice of appeal, file a written opinion in support of the order or a written supplemental
opinion that amplifies any earlier written opinion or recorded oral bench ruling or
opinion. L.B.R. 8001–1(b)."

[2]  The Debtors filed individual Chapter 11 cases.  See Bankruptcy Case Nos. 11-
15317, 11-15318 & 11-15319.  They subsequently moved to have the cases jointly
consolidated.  By Order dated August 17, 2011, the Court granted the Debtors' motion
so the cases are now being jointly administered by the Court under Bankruptcy Case
No. 11-15317.

"Premises").[3] After the evictions, the Debtors' water ice operations were taken over by

businesses (the "Business Operators") who began operating the water ice stores under

the name of Rocco's Italian Ice.[4]

After filing for relief under Chapter 11 of the Bankruptcy Code, the Debtors filed

the Motion seeking, *inter alia*: (i) to have the Landlords and Business Operators held in

contempt for violating the automatic stay; (ii) an order restoring possession to the

Debtors of their leaseholds, equipment and inventory; (iii) permission to assume their

non-residential real property leases under 11 U.S.C. § 365; (iv) an award of damages

against the Landlords and Business Operators pursuant to 11 U.S.C. § 362(k)(1); and

(v) an expedited hearing thereon. The Court scheduled an expedited hearing on the

Motion for July 20, 2011. At the close of the evidentiary hearing on July 20th, the Court

concluded that there were outstanding legal issues that it needed to resolve before it

could rule upon the Motion. Accordingly, the Court set a schedule for the submission of

legal briefs on the issues at hand and continued the hearing to August 18, 2011. The

Court also ordered the Business Operators to establish an escrow account into which

all receipts from the water ice operations were to be deposited subject to payment of

certain expenses pursuant to an agreed upon budget.

---

[3] The landlord of Ice Treats One and Ice Treats Two is Reyes Real Estate
Corp.; the landlord of Ice Treats Four is Reyes Rockland Street Properties, LLC.
According to the testimony of Daniel Reyes, he is the President of these entities.
Transcript, dated July 20, 2011 ("Tr."), at 67.

[4] The Business Operators are: (i) Rocco's Italian Ice  – Feltonviille; (ii) Rocco's
Italian Ice – Lawncrest, LLC; and (iii) Rocco's Italian Ice  – Nicetown, LLC.   The
"principal" of the Landlords is the husband of the "principal of the Rocco's entities[.]"
Respondent's Trial Brief at 15.

2

At the hearing on August 18, 2011, the Court issued its Bench Ruling, holding as

follows: (i) the leaseholds, equipment and inventory are property of the respective

Debtors' estates under 11 U.S.C. § 541; and (ii) the Landlords and Business Operators

had been violating the automatic stay of 11 U.S.C. § 362 since the commencement of

the Debtors' bankruptcy cases.  Based on these conclusions, the Court ordered:

> (i)    the Landlords and Business Operators to restore
>        possession of the leaseholds, equipment and
>        inventory to the Debtors by noon of the next day;
>
> (ii)   the transfer of funds being held in the escrow
>        account to the Debtors;
>
> (iii)  the Debtors have permission to assume the
>        real property leases under 11 U.S.C. § 365
>        provided they comply with the requirements
>        thereof; and
>
> (v)    a hearing on Debtors' request for monetary
>        damages under § 362(k) shall be held on
>        September 21, 2011.[5]

On August 25, 2011, the Written Order was entered.  Docket Entry No. 74.

On August 26, 2011, the Landlords and the Business Operators filed a notice of

appeal from the Order "entered this case on August 25, 2011, and as announced from

the bench on August 18, 2011."  Docket Entry No. 77.  This Opinion contains a detailed

account of the facts and law upon which the Court relied in issuing its Bench Ruling and

the accompanying Written Order.

---

[5] The hearing has since been rescheduled for October 18, 2011.  See Docket
Entry No. 85.

3

## BACKGROUND

### I. The Leases

The three leases (collectively referred to as the "Lease") between the parties are dated August 14, 2007.  See Exhibits 2, 3 & 4; see also Tr. at 48 & 64 (the leases were identified and admitted into evidence).  The Lease is signed by Paul Spangler as the President of the Debtors and by Daniel Reyes on behalf of the Landlords.

The term of the Lease is five years and 17 days commencing on August 14, 2007.  According to the Lease, the tenant is obligated to pay rent on the first day of each month.  Lease ¶ 7.  The term "rent" under the Lease means the "Fixed Minimal Annual Rent and all other sums due by the Tenant to the Landlord under" the Lease, "however classified."  Id.  Rental payments received after the fifth day of the month are late.  Payments received after the fifth day of the month are subject to a single late charge of 5% of the monthly payment that is late.  Id. ¶ 11.  Any rental payments that are late also bear interest at the lesser of six percent (6%) per annum or the highest annual rate allowable by law.  Id.

The "Premises" for the lease involving Ice Treats One is the Rita's Water Ice Location at the Building which is located at 5901 Rising Sun Avenue, Philadelphia, Pennsylvania.  The "Premises" for the lease involving Ice Treats Three is the building located at 2271 West Hunting Park Avenue in Philadelphia.  The "Premises" for the lease involving Ice Treats Four is the building located at 100 East Rockland Street in Philadelphia.

4

Pursuant to the terms of the Lease, a default occurs when the tenant fails to pay, within five days after receiving written notice from the landlord, any installment of rent due.  Lease ¶ 28(b).  Upon the occurrence of default, the Landlord may terminate the Lease but only upon ten (10) days written notice to Tenant.  Id. ¶ 29(a)(i).  The Lease is to be construed under the law of Pennsylvania.  Id. ¶ 40.  According to the Lease, the tenant's address is 900 Rye Valley, Meadowbrook, PA 19046.  However, notices under the Lease are required to be provided to the tenant at the Premises. Id. ¶ 10.

## II.  The Written Notices

### (A) Default Letters

With regard to each Debtor, the Landlord sent a default letter (the "Default Letter(s)"), dated November 16, 2010, to Mr. Paul Spangler, by (i) certified mail, return receipt requested, to the Premises; and (ii) by regular mail, to his residence.  See R-1, R-3 & R-5; see also Tr. at 96 (admitting R-1 through R-6 into evidence).

For Ice Treats One, the Default Letter stated that Ice Treats One owed $2,730.00 in rent plus other monetary amounts such as a late fee for November's rent, U & O taxes, water bills, rent shortfalls, etc., for a total of $4,268.43 and that the tenant would be in default of the Lease unless that sum was received by the Landlord on or before November 26, 2010.  See R-1.

For Ice Treats Three, the Default Letter stated that Ice Treats Three owed $3,825.00 in rent plus other monetary amounts such as a late fee, rent shortfalls, U & O taxes, a water bill and the costs of replacing a water meter, totaling $5,368.00 and that the tenant would be in default of the Lease unless that sum was received on or before November 26, 2010.  See R-3.

5

For Ice Treats Four, the Default Letter stated that Ice Treats Four owed a late fee (for November's rent) in the amount of $136.50 and U & O taxes of $164.00 for the 1st half of 2010, for a total of $300.50 and that the tenant would be in default of the Lease unless that sum was received on or before November 26, 2010.  See R-5.

*(B)* *Termination Letters a/k/a /Notices to Quit a/k/a Eviction Notices*

The Landlord also sent a letter (the "Termination Letter(s)"), dated November 30, 2010, to each of the Debtors stating that they were in default under the Lease because the tenant failed to make the payment specified in the Default Letter and, therefore, that the Lease was terminated.  See R-2, R-4 & R-6.  The Landlord demanded that the Tenant surrender the Premises on or before December 14, 2010.  The Termination Letter was sent to Mr. Paul Spangler by: (i) certified mail, return receipt requested, to the Premises (the envelope came back with a notice on it stating that it was "undeliverable as addressed" and "closed!"); and (ii) by regular mail to his residence.

### III.  Landlord-Tenant Complaints

On November 18, 2010, the Landlord apparently filed three separate Landlord-Tenant Complaints in the Philadelphia Municipal Court against the Debtors and their owners/guarantors, Paul and Beth Spangler.  While the only documentation filed in this Court relating to these lawsuits is the documentation regarding Ice Treats One, the parties agree that identical documentation was filed and issued in the lawsuits against Ice Treats Three and Ice Treats Four (except with regard to the specific amounts due and owing by the Debtors).   For the sake of clarity, the Court's recitation of facts will be limited, in most respects, to the documents filed or issued in the litigation against Ice Treats One.

6

The Landlord-Tenant Complaint against Ice Treats One and the Spanglers states that the Tenant owes $4,268.43 in rent, plus $750 for attorney's fees, plus $110 for court costs, for a total of $5,128.93.[6]  The Complaint states that "Notice to vacate the premises by <u>12-03-2010</u> was given on <u>11-18-2010</u>."[7]  These dates are blatantly false since the Default Notice was not sent until November 16, 2010 and the Termination Letter was not sent until November 30, 2010.  Plus, the Termination Letter demanded that the tenants vacate the premises by *December 14, 2010* and not December 3, 2010 as is alleged.  Kenneth L. Baritz, Esquire, signed the Landlord-Tenant Complaint, verifying that the facts set forth therein were "true and correct and acknowledging" that he is "subject to the penalties of 18 P.S. § 4904 relating to the unsworn falsification to authorities."  Obviously, the "facts" set forth in the Complaint were not "true and correct."

Also worth noting is that the Respondent's Post Trial Brief, which was submitted by Morris & Adelman, P.C.,[8] specifically misrepresents the date upon which the Landlord sent the Debtors the Termination Letters.  <u>See</u> Respondent's Post Trial Brief at 2.  According to the Landlord's brief, the "Landlord gave the [D]ebtors notice of termination of the leases on November 16, 2010."  <u>Id</u>.  However, the November 16th

---

[6]  The Landlord-Tenant Complaint identified the date, location and time of the hearing that would be held on it. The date set for the hearing was December 16, 2010.

[7]  According to its provisions, the Lease could not be terminated until the occurrence of a default and, upon the occurrence of a default, upon  ten days written notice to the Tenant.  <u>See</u> Lease ¶¶ 28(b) & 29(a)(i).

[8]  Respondent's Post Trial Brief was "respectfully submitted" by three lawyers from Morris & Adelman, P.C., namely James W. Adelman, Kenneth Carobus, and Robert M. Morris.  The signature on the brief is illegible.

7

letter is clearly, without question, a default letter.  The November 16th letter specifically

advises the Tenant & Paul Spangler that if the amount due under the Lease is not paid

"on or before November 26, 2010, ... you will be in <u>default</u> under the Lease."  (emphasis

added).  The Termination Letters are dated November 30, 2010 and give the Debtors

until December 14, 2010 to vacate the Premises.  In contrast to the November 16th

Default Letters which quotes the default provisions from the Lease, the November 30th

Termination Letters quote the Lease provision authorizing the Landlord to terminate the

Lease upon ten days written notice to the Tenant.  Consequently, the representation in

the Respondents' Post Trial Brief regarding the date of the Termination Letters was

clearly misleading and false, which raises the issue of whether Federal Rule of

Bankruptcy Procedure 9011(b)(3) was violated by the attorneys who "present[ed] the

brief "to the court."  Fed. R. Bankr. P. 9011(b)(3).

### IV.  The Proceedings in the Philadelphia Municipal Court

Neither Ice Treats One nor the Spanglers appeared at the hearing in the

Philadelphia Municipal Court as required on December 16, 2010.  Consequently, the

Municipal Court granted a default judgment in favor of the Landlord and against the

defendants, including Ice Treats One.  Thereafter, Mr. Baritz filed a Praecipe for a Writ

of Possession in the Municipal Court.  A Writ of Possession, dated January 6, 2011,

was issued.  Subsequently, an Alias Writ of Possession, dated January 24, 2011, was

issued and served.

Notably, in January of 2011, Ice Treats One and Ice Treats Three sent a check

to their landlord, Reyes Real Estate Corp.  Tr. at 84, 93-94.  The Landlord retained the

check but did not cash or deposit it.  <u>Id</u>.

8

On or about February 8 and/or February 10, 2011, pursuant to the writs which were issued in each of the three Landlord-Tenant actions against the Debtors, the Landlords took physical possession of all three Premises.  Tr. at 31 (representation of facts by Mr. Baritz).  Upon their discovery of the eviction, Ice Treats One and the Spanglers filed a Petition on February 28, 2011, requesting the Municipal Court to open the default judgment entered against them.  On the same date, Ice Treats One and the Spanglers filed a Petition requesting the Municipal Court to restore possession of the Premises to them.  On March 8, 2011, the Municipal Court held hearings on the Petitions.  It granted the Petition to open the default judgment but denied the Petition to restore possession of the Premises.  Also, on March 8, 2011, the Municipal Court issued an Order decreeing that "the previous disposition of judgment for Plaintiff by default entered on 12/16/2010 has been vacated" and granting "judgment for Plaintiff" in a monetary amount and for "possession from 03/08/11."[9]  Thus, the Municipal Court

---

[9]  The Municipal Court's March 8, 2011 Order states:

> AND NOW, to wit this 8th day of March of 2011, upon consideration of the above captioned complaint, it is hereby ordered and decreed that the above captioned case be marked as follows:
>
> Judgment for Plaintiff.  Judgment in the amount of $7,884.93 Rent and/or Utilities, plus $0.00 Physical Damages, plus $0.00 Attorney Fees, plus $0.00 Other fees, plus $110.50 Costs for a Total Amount due of $7,995.43m plus Interest from n/a.  **Judgment for possession from 03/08/2011.** Possession granted on the basis of non-payment of rent and termination of the term.
>
> **The previous disposition of Judgment for Plaintiff by default entered on 12/16/2010 has been vacated.  The description of that disposition was:** Judgment for Plaintiff

(continued...)

vacated its earlier judgment, including its judgment for possession "from 12/16/2010."

The Municipal Court simultaneously issued a new monetary judgment and new

judgment for possession against the defendants "from 03/08/2011." (emphasis added).

On March 8, 2011, the Municipal Court issued a "Notice of Judgment of

Possession and/or a Money Judgment In Your Favor" in the Ice Treats One suit,

providing that, on March 8, 2011, a "Judgment of Possession" and a "Money Judgment"

for $7,995.42 were entered in the Landlord's favor.  The Municipal Court similarly

issued a "Notice of Judgment for Possession and/or a Money Judgment Against You" in

the same case, providing that, on March 8, 2011, a "Judgment for Possession" and a

"Money Judgment" for $7,995.42 were entered against Ice Treats One, Paul Spangler

and Beth Spangler.

---

[9](...continued)
        by default.  Judgment in the amount of $7,884.93 Rent
        and/or Utilities, plus $0.00 Physical Damages, plus $0.00
        Attorney fees, plus $0.00 Other fees, plus $110.50 Costs for
        a Total Amount due of $7,995.43, plus Interest from n/a.
        **Judgment for possession from 12/16/2010.**  Possession
        granted on the basis of non-payment of rent and termination
        of the term.  Entered on 12/16/2010 09:25 AM.<BR.>Parties
        Appearing: Reyes Real Estate Corp, Kenneth Baritz.

Municipal Court Order, dated March 8, 2011 (emphasis added).

## V. Appeal to the Court of Common Pleas

On April 6, 2011, the defendants in the Ice Treats One lawsuit filed a Notice of

Appeal from the Municipal Court order which was entered on March 8, 2011, granting

both a judgment for money and a judgment for possession in favor of the Landlord.[10]

On the Notice of Appeal, the box for "Landlord-Tenant, non-residential lease,

possession or possession and money judgment" is checked. A Praecipe to Enter Rule

to File Complaint was filed in the Court of Common Pleas in Philadelphia County.[11]

Thereafter, the Landlord filed a complaint to which Ice Treats One and the Spanglers

filed an answer with new matter. On July 6, 2011, the Landlord filed a reply with new

matter. Based on the pleadings having been filed, the Debtors' appeal to the Court of

Common Pleas was perfected. On July 7, 2011, Ice Treat One's bankruptcy counsel

filed a Suggestion of Bankruptcy with the Court of Common Pleas.

---

[10] The Landlords and Business Operators argued in this Court that the issue of possession was not appealed because the Debtors did not appeal the Municipal Court's Order of March 8, 2011, denying their Petition to Restore Possession. This argument is frivolous. The Debtors appealed the Municipal Court's March 8th Order which: (i) vacated its earlier judgment (for money and possession from 12/16/2010); (ii) entered a judgment for money; and (iii) entered a judgment for possession from 03/08/2011. Furthermore, the "Answer with New Matter of Defendants Ice Treats One, Inc., Paul Spangler and Beth Spangler" specifically asserts that Ice Treats was "wrongfully evicted," that Reyes Real Estate Corp. lacked authority to evict Ice Treats one from its Premises and that Reyes Real Estate Corp.'s "right to possession is barred for failure to provide notice of default and notice of termination in accordance with the terms of the Lease ...and otherwise." See Answer with New Matter of Defendants Ice Treats One, Inc., Paul Spangler and Beth Spangler ¶ 2, 14, 35.

[11] A supersedeas was granted but was subsequently terminated. The existence or non-existence of a supersedeas is irrelevant to the Court's disposition of this matter.

11

## DISCUSSION

The filing of a Voluntary Petition for Relief under the Bankruptcy Code operates

as a stay of "any act .... to exercise control over property of the estate." 11 U.S.C.

§ 362(a)(3).   When a lease has not been terminated prior to a bankruptcy filing, "there

is no doubt that the lease is property of the estate subject to the automatic stay." In re

Borbidge, 66 B.R. 998, 1003 (Bankr. E.D. Pa. 1986).   Moreover, a debtor in a

bankruptcy case has a right to assume an unexpired lease pursuant to the conditions

set forth in 11 U.S.C. § 365.  Consequently, upon the filing of a bankruptcy petition, a

debtor acquires certain rights and protections that it did not possess prior to filing its

bankruptcy case.  In determining whether the Debtors are entitled to the protections of

the automatic stay and the right to assume under § 365, it was necessary for this Court

to decide whether the Lease was terminated pre-petition.  However, before the Court

addressed this issue, it had to determine whether it had jurisdiction over this matter

and, if so, whether it should exercise its jurisdiction.

## I. Jurisdictional Arguments

*(A)*    *The Rooker-Feldman Doctrine*

The Landlord and the Business Operators argue that this Court is barred from

deciding this matter based on the *Rooker-Feldman* doctrine.  See Memorandum of Law

in Opposition to Motion of Debtors Seeking Relief at 1-5.  The *Rooker-Feldman* doctrine

applies to  "'cases brought by state-court losers complaining of injuries caused by

state-court judgments rendered before the district court proceedings commenced and

inviting district court review and rejection of those judgments.'" Reisinger v.

County of Luzerne, 2011 WL 3099271, at *1 (3d Cir. July 26, 2011) (*quoting* Exxon

Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, 125 S.Ct. 1517, 161

L.Ed.2d 454 (2005)).    The doctrine precludes lower federal courts from exercising

appellate jurisdiction over *final* state-court judgments.  Lance v. Dennis,

546 U.S. 459, 463 (2006) (emphasis added).

As the Court concluded at the hearing on July 20, 2011, see Tr. at 6, 21-24, the

*Rooker-Feldman* doctrine is inapplicable in the instant case because this Court is not

exercising jurisdiction over a final state-court judgment.  First, the Debtors  appealed

from the Municipal Court's Orders, dated March 8, 2011, granting judgments against

them for money and possession.  When a tenant files such an appeal, the proceeding

on appeal is conducted *de novo* pursuant to the Rules of Civil Procedure.  See

Pa.R.C.P.M.D.J. 1007.  Since the procedure on appeal to the Court of Common Pleas

is a *de novo* review, the judgments rendered by the Municipal Court lack the "finality"

necessary to trigger *Rooker-Feldman's* jurisdictional bar.  Housing Authority of Beaver

County v. Alberts (In re Alberts), 381 B.R. 171, 177-180 (Bankr. W.D. Pa. 2008).  See

also Independent Technical Services v. Campo's , 812 A.2d 1238, 1240-41 (Pa. Super.

2002) (ruling that the judgment previously entered at the district magistrate level was

"nullified by perfection" of an appeal *de novo* to the court of common pleas).[12]

Furthermore, the Debtors filed their bankruptcy cases during the pendency of the

---

[12]   The Debtors' appeals to the Court of Common Pleas were perfected with the
filing of the Landlords' complaints the Debtors' answers with new matter and the
Landlords' replies to new matter.  See Independent Technical Services, 812 A.2d at
1240-41 (appeal *de novo* from judgment entered at the magistrate level was perfected
by the filing of a complaint, answer with new matter and counterclaim and the reply
thereto).

proceeding before the Court of Common Pleas (*i.e.*, before a final judgment was issued in the *de novo* proceeding). Therefore, the argument that the *Rooker-Feldman* doctrine bars this Court from exercising jurisdiction over this matter is meritless.

(B)     *The Younger Abstention Doctrine*

The Landlords and Business Operators also assert, as an alternative to their *Rooker-Feldman* argument, that this Court should apply the *Younger* abstention doctrine and decline to exercise jurisdiction over this matter. See Memorandum of Law in Opposition to Motion of Debtors Seeking Relief at 4-7.  The *Younger* abstention doctrine "'reflects a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances.'" Wattie-Bey v. Attorney General's Office, 2011 WL 1504914, at *2 (3d Cir. April 21, 2011) (citation omitted). Courts are obligated to abstain "'from exercising jurisdiction over a particular claim where resolution of that claim in federal court would offend principles of comity by interfering with an ongoing state proceeding.'"  Id.  The *Younger* abstention doctrine is appropriate when the following three requirements are met:  (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims.  Id.  See also Funches v. Household Finance Consumer Discount Company (In re Funches), 381 B.R. 471, 485 (Bankr. E.D. Pa. 2008).  "All three factors must be met for a federal court to rely upon *Younger* in abstaining from exercising jurisdiction."  Id.  "[T]he mere existence of a pending state proceeding between the parties that parallels the facts of the federal action is not in itself sufficient." Addiction Specialists, Inc. v. Township of Hampton, 411 F.3d 399, 408 (3d Cir. 2005).

In the instant bankruptcy matter, there is an ongoing state proceeding which is judicial in nature, namely the appeal *de novo* in the Court of Common Pleas.[13]  As such, the first requirement for the *Younger* abstention doctrine is met.  Insofar as the second requirement, there are issues of state law at stake (*i.e.*, whether the Debtors defaulted under the Lease and the Landlords were entitled to possession) but they do not, at least under the particular circumstances of the instant matter, involve "important state interests."  However, since resolution of the aforementioned state issues will gravely impact the outcome of the Debtors' Chapter 11 cases, there are strong federal interests at stake.  See Harley Hotels, Inc. v. Rain's International, Ltd, 57 B.R. 773, 781 (M.D. Pa. 1985) (denying landlord's request to abstain or withdraw the reference where debtor filed a motion to assume its lease with the landlord on the grounds that "there was no reason why the bankruptcy court" could not make the determination of whether the landlord was entitled to possession of the leased premises and the matter concerned "the major asset of the estate.").  Furthermore, because the state court proceedings are *de novo* appeals from the judgments rendered by the Municipal Court for money and possession, the proceedings in the Court of Common Pleas will not offer the Debtors any opportunity, much less an adequate opportunity, to assert the federal rights which they may have under the Bankruptcy Code.  Thus, only one requirement for application of the *Younger* abstention doctrine is met which means that this Court cannot rely upon the doctrine to abstain from exercising jurisdiction in this matter.  See Tr. at 6 (concluding that *Younger* abstention doctrine does not apply here).

---

[13]  The state proceedings were stayed by Debtors' bankruptcy filings, see 11 U.S.C. § 362(a) (continuation of judicial action that was commenced against a debtor is stayed by the filing of the debtor's bankruptcy case), but they are still pending.

15

## II. Whether the Lease Was Terminated Pre-Petition?

In ruling on the Motion, this Court was mindful of the fact that it was not acting as

a substitute for the state court and conducting a *de novo* appeal of the Municipal

Court's Order.[14]  To the contrary, this Court's obligation was to determine: (i) whether

the Landlords and Business Operators were violating the automatic stay; and (ii)

whether the Debtors are entitled to the opportunity to assume the Lease under § 365.

In resolving these issues, it was necessary for this Court to decide whether the Lease

was properly terminated pre-petition.  To do so, the Court reviewed whether the

---

[14]  There is a split in the law of Pennsylvania, at least at the trial court level, on
this issue of whether the trial court (*i.e.*, the court of common pleas) lacks jurisdiction
over an appeal *de novo* from the district court if the district justice did not have proper
jurisdiction when he or she rendered judgment.  Compare Fulton Terrace Ltd.
Partnership v. Riley, 1989 WL 225732, 4 Pa. D. & C.4th 149 (March 30, 1989)
(concluding that, while Pa.R.C,P.M.D.J. No. 1007 enables parties to start anew
procedurally at the court of common pleas level, the court of common pleas cannot
exercise jurisdiction over an appeal *de novo* from a magisterial district justice if she did
not have proper jurisdiction when she rendered her judgment) with Pheasant Hill
Estates Associates v. Milovich, 1996 WL 942099, 33 Pa. D. & C.4th 74 (August 1,
1996) (ruling that the court of common pleas "obtains jurisdiction *de novo*" when "an
appeal is filed from a district justice decision[,]" but concluding, nevertheless, that the
landlord did not meet "its procedural due process obligations" to the debtors "during its
attempt at eviction.") and Allegheny Housing Rehabilitation Corp. v. Wilson, 1992 WL
604053, 17 Pa. D. & C.4th 513 (May 19, 1992) (opining that, in an appeal from a district
justice proceeding, the court of common pleas is concerned solely with whether it has
jurisdiction and not whether the district justice had jurisdiction).  In issuing the Bench
Ruling and accompanying Written Order, it was unnecessary to resolve this split in the
law. If the Court of Common Pleas lacked jurisdiction in the Debtors' appeals *de novo*
because the Municipal Court lacked jurisdiction when it rendered its judgments, this
Court would still conclude that the Lease was not terminated pre-petition because the
Municipal Court's ruling would be void for lack of jurisdiction. See Commonwealth
Department of Transportation v. Stollsteimer,156 Pa. Commw. 64, 66 n.2, 626 A.2d
1255, 1255 n.2, 1993 WL 214629, at *1 n.2 (April 27,1993) (order issued by a court
lacking subject matter jurisdiction is void which means "it is a nullity.").

Landlords complied with the requirements under Pennsylvania law for terminating the Lease.[15]

(A)     *The Landlords Failed to Comply
        with the Requirements of the
        Landlord and Tenant Act of 1951*

Based upon The Landlord and Tenant Act of 1951, see 68 P.S. § 250.101 *et seq.,* the Third Circuit Court of Appeals has observed that "a landlord must give a tenant . . . notice in writing before *commencing* eviction proceedings." Williams v. Kusnairs Bar & Tavern, 288 Fed. Appx. 847, 849-50, 2008 WL 2893693, at *2 (3rd Cir. 2008) (unpublished opinion) (emphasis added) (*citing* 68 Pa. Stat. Ann. § 250.501 (2007)).[16] See also Watson v. Philadelphia Housing Authority, 629 F. Supp.2d 481, 486 (E.D. Pa. 2009) (emphasis added) ("*Before proceeding with an eviction*, Pennsylvania law requires landlords to provide tenants with [a] notice to quit[,]"); Clarkson v. Decaceres (In re Clarkson), 105 B.R. 266, 268 (Bankr. E.D. Pa. 1989) (emphasis added) (finding that "after providing the *prerequisite written notice to quit*, the Defendant filed a landlord-tenant proceeding in Philadelphia Municipal Court[.])" Fulton Terrace Ltd. Partnership v. Riley, 4 Pa. D. & C.4th 149, 151, 1989 WL 225732, at *2 (March 30, 1989) (emphasis added) ("*Prior to bringing an action for possession* before a district justice, *a landlord is required to serve a notice to quit* the premises on the tenant in

_____

[15] While the perfection of the Debtors' appeal from the Municipal Court's judgments "nullified" or "extinguished" the Municipal Court's judgments, the issue of whether the Lease was properly terminated pre-petition depends upon the events leading to such judgments.

[16] Even though unpublished opinions of the Third Circuit are not precedential, they carry "considerable persuasive authority." Marracco v. Kuder, 2009 WL 235469, at *3 (D. N.J. Jan. 30, 2009).

17

accordance with section 250.501 of the Landlord and Tenant Act,").  The notice

required by § 250.501, which is titled "Notice to quit," is a notice to the tenant to

"remove from" the real property which the landlord desires to repossess.  68 Pa. Cons.

St. Ann. § 250.501(a).  In <u>Elizabethtown Lodge No. 596, Loyal Order of Moose v. Ellis</u>,

391 Pa. 19, 137 A.2d 286 (1958), the Pennsylvania Supreme Court explained the

difference between a notice of default and a notice to quit, stating:

> A demand for payment and notice to quit cannot be equated
> for they are two entirely different steps that a landlord must
> pursue before declaring a forfeiture of a lease. The purpose
> of the former is to afford the tenant a reasonable opportunity
> to make payment while the purpose of the latter is to give
> the tenant time to prepare for eviction once he has failed to
> respect the demand and further to evidence the fact that the
> landlord is exercising his option to repossess the premises.
> ... The distinction between notice to quit and demand for
> payment is further evidenced by the recent Landlord and
> Tenant Act (Act of April 6, 1951, P.L. 69, 68 P.S. § 250.501),
> which requires a landlord seeking possession to give notice
> to remove after the failure of the tenant upon demand to pay
> the overdue rent.

391 Pa. at 27, 137 A.2d at 290.

   Since the Landlords did not give the Debtors the notice required by § 250.501

and the Lease until November 30, 2010, which was twelve (12) days *after* they filed

their Landlord-Tenant Complaints,[17] the Landlords failed to comply with the

prerequisites for commencing their eviction actions against the Debtors as is plainly set

---

   [17]  Pursuant to the requirements of the Landlord and Tenant Act, when a landlord
seeks to evict a tenant due to the "failure of the tenant, upon demand, to satisfy any
rent reserved and due," the notice must "specify that the tenant shall remove within ten
days from the date of the service thereof."  68 Pa. Cons. Stat. Ann. § 250.501(b).
While the parties to a lease may agree to a shorter time than ten days, they did not do
so in the instant case.  <u>See</u> Lease ¶29(a) (providing for "ten (10) days' written notice
("Termination Notice") to Tenant[.]").  The time period in § 250.501(b) varies depending
upon the reason for the tenant's eviction.

18

forth in 68 P.S. § 250.501(a).  Since lease forfeitures are deemed odious and looked

upon with disfavor by the Commonwealth of Pennsylvania, <u>Oxford Associates Real</u>

<u>Estate, L.p. V. Tsi Society Hill, Inc.</u>, 2007 WL 128886, *3 at  (E.D. Pa. Jan. 11, 2007);

<u>Elizabethtown Lodge No. 596, Loyal Order of Moose v. Ellis</u>, 391 Pa. 19, 26, 137 A.2d

286, 289 (1958), this Court concludes that the Landlords failed to properly obtain

judgments in their favor on their Landlord-Tenant Complaints and, thus, were not

entitled to have the Debtors evicted from their Premises.

(B)    A Tenant's Right to Cure
       <u>Under Pennsylvania Law</u>

Under Pennsylvania law, it is well established that "a tenant has the right to cure"

a monetary or monetary defaults "under a lease until actual execution of the writ of

possession."  <u>In re Turner</u>, 326 B.R. 563, 572 (Bankr. W.D. Pa. 2005); <u>In re Vitanza</u>,

1998 WL 808629, at *10 n.23 (Bankr. E.D. Pa. Nov. 13, 1998).  <u>See</u> <u>also</u> 68 Pa. Cons.

St. Ann. § 250.503(c) (2004) ("At any time before any writ of possession is actually

executed, the tenant may, in any case for the recovery of possession solely because of

the failure to pay rent due, supersede and render the writ of no effect by paying ... the

rent actually in arrears and costs.").  Because a tenant has this right to cure, "a lease is

not terminated when such termination is based solely on monetary defaults until actual

execution of the writ of possession."  <u>In re Vitanza</u>, 1998 WL 808629, at *10 n.23.

In the instant case, the writs of possession should never have been issued

because the Landlords failed to comply with the notice provisions of The Landlord and

Tenant Act of 1951.  Since the writs of possession should never have been issued, the

execution of such writs cannot be deemed to have cut-off the Debtor's right to cure.  To

conclude otherwise would: (i) condone the Landlords' failure to comply with the

19

prerequisites set forth in § 250.501 for filing a complaint for eviction; and (ii) wrongfully

deprive the Debtors of their right to cure.  See Galizia v. Tardino, 87 Pa. D. & C. 191,

1954 WL 4393 (Common Pleas Ct. Feb. 11, 1954) (concluding that it was unnecessary

to decide questions regarding the validity of the writ of possession since the landlords

failed to comply with the requirements of 68 P.S. § 250.501 prior to filing their complaint

to recover possession of leased premises).  See also In re Telephonics, Inc., 85 B.R.

312, 316 (Bankr. E.D. Pa. 1988) (emphasis added) (observing that, under Pennsylvania

law, a "tenant retains a right to cure any rental delinquency and preserve the tenancy

until the moment of actual valid and complete eviction of the tenant.").   Consequently,

this Court concludes that: (i) the Lease was not effectively terminated pre-petition;[18] and

(ii) the Lease is property of the Debtors' estates, see In re Jarris Discount Tire Co. Inc.,

36 B.R. 406 (Bankr. E.D. Pa.1984) (ruling that, since the lease that was not effectively

terminated before the Order for Relief was entered in the debtor's bankruptcy case, the

lease was unexpired and, therefore, the leasehold was property of the debtor's estate).

### III. Violation of the Automatic Stay

Because the Lease was not terminated pre-petition, the Debtors retained their

interests in the Premises.  The Landlord and Business Operators' failure to return the

Premises to the Debtors after notice of their bankruptcy filings was a violation of

---

[18] Notably, in its Order, dated March 8, 2011, the Municipal Court specifically
vacated the judgment for possession which it granted in its Order, dated December 16,
2010.  When a judgment is vacated, the judgment "is entirely destroyed and the rights
of the parties are left as though no such judgment had ever been entered."  Fitzpatrick
v. Fitzpatrick, 811 A.2d 1043, 1045 (Pa. Super. 2002) (quoting Rufo v. Bastian-Blessing
Co., 420 Pa. 416, 218 A.2d 333, 334 (1966)).  The Municipal Court's simultaneous
entry on March 8, 2011 of another judgment for possession effective as of "03/08/2011"
could not render the Writs of Possession, which were issued prior to that date, valid.

§ 362(a)(3) of the automatic stay.[15]  See <u>Alvarez v. McSwiggen (In re Alvarez)</u>, 319 B.R.
108 (Bankr. W.D. Pa. 2004).  Whether such violation was wilful shall be determined at a
later hearing.

### IV.  Debtors' Right to Assume Lease

Pursuant to 11 U.S.C. §§ 365 and 1107, the Debtors may assume any unexpired
lease.  However, § 365(c)(3) provides that a debtor may not assume a nonresidential
real property lease if it "has been terminated under applicable nonbankruptcy law prior
to the order for relief."  11 U.S.C. § 365(c)(3).  Since the Court concluded that the
Lease was not terminated under nonbankruptcy law prior to the entry of the applicable
Orders for Relief, the Debtors are entitled to assume the Lease provided they satisfy
the requirements for doing so under § 365.

### SUMMARY

The Lease was not effectively or properly terminated pre-petition.  Therefore, the
Landlords and Business Operators violated the automatic stay by exercising control of
the Premises after the Debtors filed their bankruptcy cases.  Furthermore, the Debtors
have the right under § 365 of the Bankruptcy Code to assume the Lease provided they
satisfy the conditions for doing so.

9/8/2011

_____
Honorable Jean K. FitzSimon
United States Bankruptcy Judge

_____

[15]  No argument was made to this Court that any exception to § 362(a)(3)
applied.